1:18MJ4185-JDG

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Dave Carney, Detective with the City of Westlake Police Department, currently assigned to the Northern Ohio Law Enforcement Task Force (hereinafter referred to as NOLETF) hereinafter referred to as Affiant, being duly sworn, do depose and state that:

### INTRODUCTION

1. As a Task Force Officer of the FBI, your Affiant is an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

2. Your Affiant has been employed by the Westlake Police Department since September 1992. Your Affiant has been assigned to the NOLETF a Cleveland based, multi-agency, federal, state, and local law enforcement drug task force since 2010. Your Affiant has participated in investigations targeting organizations involved in drug trafficking offenses in the Northern District of Ohio and elsewhere. Prior to this assignment, your Affiant was assigned to investigate drug-related offenses as well as other general criminal offenses in the State of Ohio as well as the Northern District of Ohio. These crimes were prosecuted in state court as well as federal court. Your Affiant is also a certified peace officer in the State of Ohio.

3. Your Affiant is aware that it is common for drug traffickers to secret drugs, contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and vehicles, the residences and vehicles of their associates, and of family members for ready access and to conceal them from law enforcement authorities.

4. As a result of your Affiant's personal participation in this investigation and reports made to your Affiant by other Special Agents of the FBI and other state and local law enforcement officers, witnesses and reliable confidential sources, your Affiant is familiar with the circumstances and offenses described in this Affidavit.

5. As a Police Officer with the Westlake, Ohio, Police Department, your Affiant received basic drug training with the Ohio State Highway Patrol Training Academy (OSP). Your Affiant received three months of field training by officers of the Westlake Police Department. During this time, your Affiant participated in routine police functions, including but not limited to investigating drug related offenses. Your Affiant was assigned to the Northern Ohio Law Enforcement Task Force (NOLETF) in 2010. Your Affiant has received basic narcotic investigation training by in which basic and advanced drug-related investigation techniques were conducted, including, but not limited to: surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation. Your Affiant receives annual training at the Westlake, Ohio, Police Department regarding law enforcement matters, including matters relating to drug trafficking. Your Affiant has participated in all of the usual methods of investigation including, but not limited to: visual surveillance, questioning witnesses, and analyzing evidence. Your Affiant has been involved in drug-related arrests. Your Affiant has planned and executed search warrants resulting in the seizure of drugs, their proceeds, weapons, and drug preparation tools. Your Affiant has supervised the activities of informants who have provided information concerning controlled substances and organized criminal activities, purchased controlled substances, and supervised consensual monitoring in connection with these investigations. Your Affiant has previously participated in Title III wiretaps and investigations.

6. Based on training and experience Affiant is aware drug traffickers often transport contraband in vehicles that are utilized to transport the contraband into and across the United States.  The contraband is then stored at different locations.  The practice of storing contraband and money at locations makes it necessary for the drug trafficker to possess and transport

contraband and money to and from storage locations, including storage lockers, also sometimes referred to as "stash houses."

    7.    Based on the above training and experience, your Affiant is familiar with the *modus operandi* of persons involved in the illegal distribution of controlled substances, as well as the terminology used by persons involved in the illegal distribution of controlled substances. Your Affiant is aware that persons involved in the illegal distribution of controlled substances nearly always attempt to conceal their identities, the location at which drug transactions take place, and the flow of proceeds derived from their illicit drug transactions into "clean" currency. Your Affiant knows that individuals engaged in organized drug distribution and sales maintain extensive contact with persons throughout the United States, as well as foreign countries from which they receive drugs and paraphernalia, drug information, and information on others in the local area who are competing in the unlawful activity of drug distribution. Your Affiant also knows the following related to drug traffickers:

    8.    That narcotic traffickers must maintain on hand large amounts of U.S. Currency in order to finance their on-going narcotic business and often keep this currency in their possession.

    9.    That drug traffickers maintain books, records, receipts, notes, ledgers, and similar items of their drug trafficking activity where the drug traffickers have ready access to them.

    10.    That persons involved in drug trafficking conceal illegal controlled substances, large amounts of currency, financial instruments, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in narcotics trafficking activities in their residences or other locations associated with them.

11.     That drug traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers for their associates in the drug trafficking organization.

12.     That persons involved in drug trafficking conceal in their residences ("stash houses") safes, large amounts of currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money derived from engaging in narcotics trafficking activities.

13.     That when drug traffickers amass large amounts of proceeds from the sale of drugs, they attempt to legitimize these profits through money-laundering activities and that they often keep records of such activity (e.g. bank records, ledgers, business records, withdrawal and deposit slips, etc.) at their residences.

14.     That drug traffickers commonly have in their possession at their residences and/or their businesses, firearms, including but not be limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons.  Said firearms are used to protect and secure a drug trafficker's property.

15.     That drug traffickers often maintain records linking them to their trafficking and that these records may include records of narcotic sales, debts, shipments, which may be contained in electronic organizers, pagers, cellular telephones, computers [hard drives], CD ROMS, telephone books which identify customers and/or co-conspirators, and photographs of co-conspirators.  Even if off-site locations are used to store records, some evidence such as safety deposit keys, records, and receipts and/ or documents regarding mini-warehouses, mail and answering services, etc., will be present.

**BASIS OF INFORMATION**

16. Your Affiant is familiar with the facts and circumstances of the offenses described in this Affidavit based upon your Affiant's personal participation in the investigation of ANTONIO STEWART, as well as through information obtained from other law enforcement agencies, witnesses, and reliable sources.

17. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by FBI Agents or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom your Affiant has spoken or whose report your Affiant has read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth your Affiant's observations but rather has been provided directly or indirectly by FBI Agents or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS); from Thompson Reuters, a law enforcement credit header database (CLEAR); from the State of Ohio or the National Crime Information Center (NCIC) computers; or by the Ohio Law Enforcement Gateway database (OHLEG) by members herein described.

18. Since the Affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrant for ANTONIO STEWART, your Affiant has not included each and every fact known concerning this investigation. Your Affiant has set forth only the facts that are believed to be necessary to establish the foundation for a criminal complaint.

19. Based upon the information contained in this Affidavit, I submit there is probable cause to believe that beginning on or about July 27, 2018, and continuing until at least August

15, 2018, in the Northern District of Ohio, ANTONIO STEWART has committed violations of Title 21, United States Code, Sections 841(a)(1), possession with the intent to distribute and distribution of Marijuana and Title 18, United States Code, Section 922(g)(1), being a felon in possession of a firearm.

## CONFIDENTIAL SOURCES

20. Your Affiant has received information obtained from one confidential source (CI #1) during the course of this investigation.

21. CI #1 been providing information to Law Enforcement for approximately 1 month. CI #1 has provided information to law enforcement concerning activities of multiple gang members trafficking narcotics and weapons in the Lorain, Ohio, Cleveland, Ohio and Akron, Ohio areas. CI #1 has conducted narcotics purchases on behalf of law enforcement and made consensually recorded telephone calls. CI #1 has consistently provided timely and accurate criminal intelligence, and has never provided information that was later proven to be false or misleading. For these reasons, your Affiant believes that CI #1's information is reliable.

## FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE

22. CI #1 has provided information to Law Enforcement concerning activities of multiple organizations involving gang activity in the Cleveland, Lorain, and Akron, Ohio areas. CI #1 has conducted narcotics and weapons purchases on behalf of Law Enforcement and made consensually recorded telephone calls. CI #1 is providing information to investigators for consideration on criminal charges. CI #1 has consistently provided timely and accurate criminal intelligence, and has never provided information that was later proven to be false or misleading. For these reasons, your Affiant believes that CI #1's information is reliable.

23. Affiant states that ANTONIO STEWART has been identified in this investigation as a marijuana and weapons distributor in the Lorain, Ohio, area with a weapons related criminal

history. Over the past several weeks, your Affiant has personally participated with investigators of the Northern Ohio Law Enforcement Task Force (NOLETF) in this investigation. STEWART has prior convictions for Domestic Violence, a felony in the fourth degree, and Having Weapons Under Disability, a felony in the third degree. STEWART is prohibited from possessing firearms and/or ammunition.

24. Affiant states that on July 27, 2018, NOLETF investigators met with CI #1 for the purpose of purchasing (1) pound of marijuana, from ANTONIO STEWART. This first controlled purchase was also meant to investigate a possible to offer to sell guns by STEWART. Prior to the controlled purchase, CI #1 made arrangements and in the presence of investigators contacted STEWART on the phone. Prior to the meet, CI #1 was outfitted with an audio and video recording device.

25. Affiant states on July 27, 2018, while under surveillance by investigators, CI #1 made contact with STEWART and was instructed by STEWART to travel to **812 West 10th Street, Lorain, Ohio**, and was observed entering the residence. Surveillance officers with NOLETF and Lorain Narcotics Bureaus identified ANTONIO STEWART, Michael Young and Derek Worthy on the front porch of the residence prior to CI #1's arrival. STEWART entered the residence with CI #1 shortly after CI #1 arrived. Investigators maintained constant surveillance in the area of the **812 West 10th Street residence**. Affiant states that during the process in which the marijuana was being weighed for sale, either Worthy or Young had to retrieve another bag containing an unknown amount of marijuana from a camper parked in the driveway of **812 West 10th** in order to complete the (1) one pound sale to CI #1. Your affiant became aware of this based on surveillance at the scene and in speaking to CI #1 after the sale.

26. Affiant states that after the sale, CI #1 exited the residence and contacted investigators and advised the drug transaction was complete. Investigators observed CI #1 exit

7

the **812 West 10th** residence. CI #1 traveled to a pre-determined meet location for a debriefing, where investigators retrieved the (1) one pound of marijuana from CI #1. During the debriefing, CI #1 stated that STEWART provided the marijuana to CI #1. CI #1 stated that a discussion took place in which CI #1 asked STEWART about purchasing guns. STEWART offered to sell an "AK" type of assault rifle and a .357 handgun to CI #1. STEWART priced the assault rifle at $500.00 and the .357 at $150.00. Neither weapon was available at **812 West 10th**. CI #1 stated that based on conversations with STEWART, the guns are kept at **1622 New Jersey, Lorain, Ohio**. CI #1 stated that drugs are sold at the **812 West 10th** address. STEWART sold the (1) one pound of marijuana to CI #1 for $2000, which was provided by NOLETF confidential funds. The suspected marijuana was later submitted to the Ohio Bureau of Criminal Investigation Laboratory for analysis. The suspected marijuana field tested positive for marijuana using a NIK field test.

27.     Affiant states that investigators met with CI #1 on July 31, 2018, for the purpose of purchasing one half (1/2) pound of marijuana and an assault rifle referred to as a "AK". Prior to the controlled purchase, CI #1 made arrangements and in the presence of investigators contacted ANTONIO STEWART on the phone. Prior to the meet, CI #1 was outfitted with an audio and video recording device.

28.     Affiant states that CI #1 was instructed by STEWART to travel to **812 West 10th Steet, Lorain, Ohio**. While under surveillance, CI #1 traveled to the area of **812 West 10th Street, Lorain**. While under surveillance, C1 #1 was observed by investigators knocking at the door as STEWART was not at the residence yet. Shortly thereafter, STEWART arrived. STEWART and CI #1 entered a camper parked in the driveway of **812 West 10th Street**. Shortly thereafter, CI #1 exited the camper after purchasing a half pound of marijuana from STEWART for $1200.00. During the transaction, STEWART told CI #1 that the "AK" deal

could still be completed by sliding the gun out from the rear window of **1622 New Jersey** in order to conceal the transaction. The gun deal was planned for a future date. STEWART sold the half pound of marijuana to CI #1 for $1200.

29. Affiant states that on August 3, 2018, NOLETF investigators met with CI #1 for the purpose of purchasing one half pound of marijuana and an assault rifle described as an "AK" from ANTONIO STEWART. Prior to the controlled purchase, CI #1 made arrangements and in the presence of investigators contacted STEWART on the phone. Prior to the meet, CI #1 was outfitted with an audio and video recording device.

30. Affiant states on August 3, 2018, under the watch of investigators, CI #1 made contact with STEWART at **812 West 10th Street, Lorain, Ohio**. CI #1 was observed by investigators entering the residence of **812 West 10th Street, Lorain, Ohio**. Shortly thereafter, investigators observed CI #1 and STEWART leaving the residence together in CI #1's vehicle, which was kept under surveillance. CI #1 and STEWART were later seen by investigators parked in front of **1622 New Jersey**. STEWART stopped to speak to a female identified as Kala Weese parked in a vehicle in the driveway of the residence. Weese left the area in the vehicle as STEWART and CI #1 entered **1622 New Jersey**. Affiant viewed CI #1 exit the **New Jersey** residence investigators walk to CI #1's vehicle while concealing the assault rifle in a blanket. Investigators maintained constant audio and/or visual surveillance of CI #1.

31. Subsequent to leaving the **New Jersey** residence, CI #1 traveled to a pre-determined meet location for a debriefing, where investigators retrieved the "AK" assault rifle identified as a Romanian made CN Romarm, serial number #1984 PF 5483, 7.62 caliber assault rifle with a fully loaded magazine. CI #1 stated that STEWART did not want to sell the half pound of marijuana after selling the assault rifle due to the idea that if the police were to traffic

stop CI #1 police would detect the odor of marijuana resulting in the arrest of CI #1 with the assault rifle.

33. Affiant states that on August 15, 2018, investigators met with CI #1 for the purpose of purchasing one half pound of marijuana and a handgun. Prior to the controlled purchase, CI #1 made arrangements and in the presence of investigators contacted STEWART on the phone.

33. Affiant states that CI #1 met with STEWART at the door of **610 Broadway #25**. STEWART let CI #1 into the residence. Several minutes later, investigators observed CI #1 exit the residence, and meet at a pre-determined location. Investigators maintained constant audio and/or visual surveillance of CI #1. Affiant states CI #1 traveled to a pre-determined meet location for a debriefing, where investigators retrieved one half pound of marijuana and 2 handguns described as a 9 mm Smith and Wesson, semi-automatic handgun with a laser sight system, and loaded magazine containing buckshot rounds of ammunition, serial number #HME1151, and a Dan Wesson 357 loaded handgun, serial number #352299.

34. Affiant states that on August 15, 2018, CI #1 utilized $1200 of NOLETF confidential funds for the purchase of the half pound of marijuana, $400 of NOLETF confidential funds for the purchase of the Smith and Wesson 9 mm handgun, and $100.00 of NOLETF confidential funds for the purchase of the Dan Wesson 357 handgun. The suspected marijuana was later submitted to the Ohio Bureau of Criminal Investigations Regional Forensic Laboratory for analysis. The suspected marijuana field-tested positive by investigators utilizing a NIK filed test.

35. Based upon the information contained in this Affidavit, I submit there is probable cause to believe that beginning on or about July 27, 2018, and continuing until at least August 15, 2018, in the Northern District of Ohio, ANTONIO STEWART has committed violations of

Title 21, United States Code, Sections 841(a)(1), possession with the intent to distribute and distribution of Marijuana and Title 18, United States Code, Section 922(g)(1), being a felon in possession of a firearm.

_____
DAVE CARNEY
TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION
NOLETF

Sworn to via telephone after submission by reliable electronic means. Fed. R. Crim. P. 3, 4(d), and 4.1., on this __28th__ day of August, 2018.

_____
JONATHAN D. GREENBERG
UNITED STATES MAGISTRATE JUDGE